IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| TARA ELAINE STOKES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 19-00664-CV-W-NKL-SSA |
| ) | |
| ANDREW M. SAUL, ) | |
| Commissioner of Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant. ) | |

**ORDER**

Plaintiff Tara Elaine Stokes appeals the Commissioner of Social Security's final decision denying her applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. For the reasons set forth below, the Court affirms the Administrative Law Judge's decision.

**I.  Background**

Stokes alleges that she became disabled on February 4, 2016 when she was thirty-eight years old. (Tr. 177, 179). She filed her initial applications for disability insurance and SSI benefits on February 27, 2017. (Tr. 10). Stokes claimed disability due to numerous impairments, including multiple sclerosis, degenerative disc disease, restless leg syndrome, fatigue, anxiety, and depression. (Tr. 20, 212). The ALJ held a hearing on September 20, 2018 and subsequently issued a decision denying benefits on January 15, 2019. (Tr. 7–22). The Appeals Council declined review in a letter dated June 25, 2019. (Tr. 1–5). Stokes appealed to this Court.

The Administrative Law Judge (ALJ) concluded that Stokes had the severe impairments of multiple sclerosis and degenerative disc disease. (Tr. 13). The ALJ found that Stokes had the residual functional capacity (RFC) to perform light work, as defined by 20 C.F.R. 404.1567(b) and 416.967(b), with the following limitations:

> The claimant can never climb ladders, ropes, or scaffolds or be exposed to unprotected heights or hazardous work environments. She can occasionally climb ramps or stairs, stoop, crouch, kneel, or crawl. She can frequently balance. She must avoid concentrated exposure to extreme heat as well as to vibration. She can perform frequent fingering. She will be off-task five percent of the workday. She is limited to remembering and carrying out simple, routine tasks, and making simple work-related decisions. She cannot perform production rate tasks that require strict hourly goals.

(Tr. 16). Based on the testimony of the vocational expert (VE), the ALJ concluded that given Stokes's RFC, Plaintiff could not perform her past relevant work of office clerk, bartender, graphic designer, and customer service specialist, but could perform other work existing in significant numbers in the national economy, including the light, unskilled work of office helper (DOT 239.567-010 with 64,000 jobs nationally), counter attendant (DOT 311.477-014 with 144,000 jobs), and order caller (DOT 209.667-014 with 11,000 jobs) (Tr. 20–22, 61–64). Therefore, the ALJ determined Stokes was able to perform work that exists in significant numbers in the national economy and was not "disabled" as defined by the Social Security Act. (Tr. 22). The ALJ's decision, as the final decision by the Commissioner, is subject to judicial review.

## II. Legal Standard

In reviewing the Commissioner's denial of benefits, the Court considers whether "substantial evidence in the record as a whole supports the ALJ's decision." *Milam v. Colvin*, 794 F.3d 978, 983 (8th Cir. 2015). "Substantial evidence" is less than a preponderance but enough that a reasonable mind would find it adequate to support the ALJ's conclusion. *Id.* The Court must consider evidence that both supports and detracts from the ALJ's decision. *Id.* "[A]s long as

substantial evidence in the record supports the Commissioner's decision, [the Court] may not reverse it because substantial evidence also exists in the record that would have supported a contrary outcome, or because [the Court] would have decided the case differently." *Andrews v. Colvin*, 791 F.3d 923, 928 (8th Cir. 2015) (quotation marks and citation omitted). The Court must "defer heavily to the findings and conclusions of the Social Security Administration." *Michel v. Colvin*, 640 F. App'x 585, 592 (8th Cir. 2016) (quotation marks and citations omitted).

### III. Discussion

#### A. Whether the RFC as to Ms. Stokes's physical impairments is supported by substantial evidence

A claimant's RFC is the most she can do despite her limitations. *See* 20 C.F.R. § 404.1545(a)(1). The ALJ may formulate the RFC based not only on medical evidence, but also on other relevant, credible evidence of record, though some medical evidence is required. *Perks v. Astrue*, 687 F.3d 1086, 1092 (8th Cir. 2012). "Although it is the ALJ's responsibility to determine the claimant's RFC, the burden is on the claimant to establish his or her RFC." *Buford v. Colvin*, 824 F.3d 793, 796 (8th Cir. 2016) (citations omitted).

##### 1. Whether the ALJ Appropriately Evaluated the Medical Opinions

The Court "defers to the ALJ's determinations as long as good reasons and substantial evidence support the ALJ's evaluation . . . ." *Nash v. Comm'r, Soc. Sec. Admin.*, 907 F.3d 1086, 1090 (8th Cir. 2018) (quotation marks and citation omitted). Stokes argues the ALJ's determination as to her physical impairments was not supported by substantial evidence because the ALJ gave "considerable" weight to the opinion of Dr. Denise Trowbridge—a non-examining,

non-treating State agency physician who reviewed Stokes's file on May 11, 2017—and the opinion was years old and therefore did not consider all of the pertinent evidence.

In assessing Stokes's physical impairments, the ALJ reviewed Stokes's testimony about her symptoms and limitations as well as her reported functioning, her medical evidence from prior treatment, and the opinion of non-treating, state agency physician Dr. Trowbridge. (Tr. 16–20). In addition to the objective medical findings and treatment history, the ALJ considered other factors including the consistency of Stokes's allegations with the evidence. (Tr. 19). The ALJ found Stokes's alleged limitations to be inconsistent with the medical and opinion evidence.

Dr. Trowbridge concluded that Plaintiff could perform the exertional requirements of light work with additional postural and environmental restrictions (Tr. 73–76). The ALJ gave considerable weight to Dr. Trowbridge's opinion after determining that "Dr. Trowbridge's opinion is the only specific functional analysis in the record by an acceptable medical source, and she supported her opinion with a specific review of the claimant's longitudinal medical record." (Tr. 19). Of note, the ALJ noted that, despite Stokes's earlier history of limitations based on her multiple sclerosis and other ailments, "[s]ubsequent evidence has not demonstrated a significant decline in functioning; rather, the claimant has had no exacerbations of her relapsing and remitting multiple sclerosis, and has remained rather active." *Id.* The ALJ based this assessment on the existing medical record: In September 2016, Stokes indicated that her medication Cymbalta was "very effective in improving her mental focus and control of emotions." (Tr. 356). In October 2016, she reported "good symptom control" and felt that this reflected stability of her Multiple Sclerosis. (Tr. 17, 359). Stokes agreed to start disease-modifying therapy, (Tr. 17, 359, 364), and in March 2017, she said that she had been "doing well" since beginning the therapy, reporting no side effects or exacerbation of earlier Multiple Sclerosis symptoms. (Tr. 343, 344, 625). In July

4

2017, Stokes told her neurologist that she felt well overall and was tolerating her medication well. (Tr. 18, 638). In November 2017, Stokes indicated she was again doing "relatively well," she still had "no clear-cut relapses" due to her Multiple Sclerosis, and her neurologist noted that she was "[f]or the most part . . . functioning better" (Tr. 656). In April 2018, she continued to do well and tolerating her medications. (Tr. 675). In October 2018, her neurologist noted that Stokes still had "no definite relapses" and the therapy in place was still working. (Tr. 715). This evidence over time of Stokes's management of symptoms due to her multiple sclerosis was indication that her testimony as to the severity of her symptoms was not entirely consistent with the available record. *See Chesser v. Berryhill*, 858 F.3d 1161, 1167 (8th Cir. 2017) (holding that "doctors' observations of [claimant]'s mood and affect are relevant to the assessment of the severity of [claimant]'s symptoms"). Also, to the extent Stokes's symptoms appear to be treatable and improving, an impairment that can be controlled by treatment or medication cannot be considered disabling. *Hensley v. Colvin*, 829 F.3d 926, 933 (8th Cir. 2016).

As for Stokes's activities generally, she was "generally independent" and was able to perform self-care activities such as bathing and dressing. (Tr. 19, 236, 510). She prepared meals, did the laundry, dishes, and cleaning, and could care for her granddaughter and pet. (Tr. 15, 19, 236–37, 512). She drove and shopped in stores (Tr. 19, 238). She traveled on occasion independently, including travelling for a retreat located several hours away, vacationing out-of-state, and taking trips with family. (Tr. 14, 19, 38–43, 344, 613). She was able to attend church, go out to eat occasionally, and participate in other activities such as a bible study class, antiquing club, and "angel class" group. (Tr. 14, 19, 43–44, 47, 586). The ALJ reasonably noted that "[a]lthough the claimant reasonably experiences symptoms of her multiple sclerosis such as

5

fatigue, her retained activities suggest these symptoms are not so persistent and severe as to prevent all work." (Tr. 19).

Despite finding that Stokes's condition was stable or improving over time, the ALJ gave Stokes's testimony the benefit of the doubt over Dr. Trowbridge's opinion and further limited Stokes to "simple, routine tasks and decision-making" and jobs "not requiring a production pace rate" to account for her complaints of fatigue and cognitive and memory changes. (Tr. 19). The ALJ also limited Plaintiff to only light work and to being off-task five percent of the workday so as to further account for Plaintiff's fatigue and non-severe mental impairments. (Tr. 16).

Stokes further challenged reliance on Dr. Trowbridge's opinion, noting that Dr. Trowbridge would not have had access to all of the relevant medical records given that this opinion would have been over a year old, and additionally noted that Dr. Trowbridge is a radiation oncologist and not a specialist in areas such as multiple sclerosis. These challenges are not persuasive in light of the ALJ's consideration of the record as a whole. The ALJ reviewed the entirety of the relevant record when considering the RFC, including the treatment files for dates the occurred after Dr. Trowbridge's opinion was done, and the resulting RFC was not based solely on Dr. Trowbridge's earlier opinion. *Cf., e.g.*, *Mabry v. Colvin*, 815 F.3d 386, 391 (8th Cir. 2016) (finding "[t]he state agency physicians' opinions were consistent with the other medical evidence and it was proper for the ALJ to rely on them, in part, in formulating [claimant's] RFC."). Additionally, the ALJ was able to determine the appropriate weight to give to each medical opinion by considering a variety of factors other than just the specialty of the individual offering that opinion when formulating the RFC. *See* 20 C.F.R. §§ 404.1527(c) and 416.927(c). Finding Dr.

Trowbridge's opinion to be consistent with the medical evidence and Stokes's reported functioning, the ALJ appropriately gave Dr. Trowbridge's opinion "considerable weight."

Stokes also asserts that the ALJ inappropriately granted the opinion of Dr. Zimmerman only "little" weight and did not provide legitimate reasons for rejecting this opinion. Dr. Zimmerman had completed an independent medical evaluation and examination of Stokes on September 13, 2018, and he opined that Stokes was limited in her ability to perform tasks as a ticketing agent and office professional. (Tr. 494, 499). The ALJ determined that Dr. Zimmerman's opinion "does not appear to rule out all work activity," "is not a specific functional analysis of the most the claimant can do," and "appears to rely heavily on the subjective report of the claimant, as his examination notes describe many limitations described by the claimant, but objective findings were largely unremarkable." (Tr. 20). The ALJ did, however, give weight to Dr. Zimmerman's opinion that "[f]atigue is concomitant of multiple sclerosis" and accordingly limited Plaintiff to a range of light work with additional restrictions. (Tr. 20). When considering medical opinion evidence with the record as a whole, an ALJ is able to determine that the opinion of a non-examining physician can be granted more weight than an examining or treating physician, and in this case the ALJ afforded greater weight to the non-examining physician's opinion as a result of considering the medical evidence presented as a whole. *See, e.g.*, *Howe v. Astrue*, 499 F.3d 835, 840–41 (8th Cir. 2007) (finding that an ALJ properly discounted a treating physician's opinion when the opinion conflicted with the record as a whole, including other physicians' opinions); SSR 96–6P, 1996 WL 374180, at *3 ("[O]pinions from State agency medical and psychological

consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources.").

As such, the ALJ appropriately considered the existing medical opinion evidence in combination with the available treatment and other evidence. Together, the opinions and records available serve as substantial evidence in the record as a whole to support the ALJ's RFC as to Stokes's physical impairments.

### 2. Failure to assess RFC on function-by-function basis before assessing the exertional level.

Stokes argues that the ALJ erroneously assessed the exertional level when she concluded that Stokes was capable of engaging in light work before making a function-by-function assessment in accordance with Social Security Ruling 96-8p. Stokes cites *Pfitzer v. Apfel*, a case in which the Eighth Circuit held remand was required because the RFC only described "light work," the "fact findings . . . [were] incomplete or nonexistent," and the ALJ's determination "articulated only the outermost contours of [the claimant's] residual functional capacity" such that a reviewing court could not tell whether the ALJ had found any physical limitations. 169 F.3d 566, 568–69 (8th Cir. 1999).

The ALJ's decision here is distinguishable. While the ruling does state that Stokes can perform "light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b)" before assessing her functional limitations, the RFC goes on to provides that such definition of "light work" is limited by certain exceptions, and the ALJ subsequently details the basis for each of those exceptions. (Tr. 16–20). This is sufficient. *See Nash v. Comm'r, Soc. Sec. Admin.*, 907 F.3d 1086, 1090–91 (8th Cir. 2018) ("[Claimant] next argues the ALJ did not comply with Social Security Rule 96-8p, which requires assessing [claimant]'s RFC on a 'function-by-function' basis. This court review[s] the record to ensure that an ALJ does not disregard evidence or ignore potential limitations, but

8

Case 4:19-cv-00664-NKL   Document 13   Filed 04/24/20   Page 8 of 12

[does] not require an ALJ to mechanically list and reject every possible limitation. Here, the ALJ considered [claimant]'s alleged limitations, and substantial evidence supports the ALJ's RFC assessment.") (citations omitted); *Thorndyke v. Colvin*, No. 14–03396–MDH, 2015 WL 5522513, at *3 (W.D. Mo. Sept. 18, 2015) ("[T]he ALJ's reference to Plaintiff's 'light work' is subsequently supported by the ALJ's additional discussion of the evidence used to determine the RFC."). "[E]ven if the ALJ did not conduct the analysis in the proper order, as set out in Social Security Ruling 96-8p, such 'deficiency in opinion-writing' also does not warrant reversal." *Seitz v. Colvin*, No. 5:15-CV-06151-NKL, 2016 WL 3920463, at *8 (W.D. Mo. July 18, 2016) (finding that where an ALJ first stated a claimant was able to perform "light work" but then provided additional limitations based on an assessment of claimant's functional abilities, this was not reversible error).

Therefore, there is substantial evidence to support the ALJ's RFC that is not affected by the ALJ's stating the exertional level of "light work" before discussing Stokes's function-by-function limitations.

### B. Whether the RFC as to Ms. Stokes's mental impairments is supported by substantial evidence

#### 1. Whether the ALJ Appropriately Evaluated the Medical Opinions

The ALJ reviewed the record as a whole including the opinions of Dr. Toll and Dr. Gosal in addition to the available treatment notes and determined that Stokes's mental impairments as regarding any social deficits were not significant enough to warrant limitation in the RFC. The ALJ gave "great" weight to the May 2017 opinion of the State agency psychological consultant, Marsha Toll, Psy.D. Dr. Toll had opined that Stokes had mild limitations in understanding, remembering, and applying information; mild limitations interacting with others; mild limitations in concentration, persistence, or pace; and no limitations in adapting or managing oneself. (Tr. 71). The ALJ noted that Dr. Toll's assessment had accounted for the multitude of normal mental status

9

examination findings and Stokes's apparent ability to conduct a variety of daily activities, and granted this opinion weight given its consistency with the available medical record. (Tr. 15, 71–72). The ALJ also reviewed the evidence that Dr. Toll did not review and explained that Dr. Toll's assessment was consistent with "the overwhelmingly normal mental status findings" that had continued to be noted in Stokes's subsequent treatment records. (Tr. 15).

Stokes alleges that the ALJ did not give sufficient weight instead to the opinion of Stoke's treating psychologist, Dr. Gosal. However, the ALJ noted that Dr. Gosal's opinion was given no weight as it was inconsistent with the "overwhelmingly normal mental status examination findings" and history of Stoke's steady improvement as noted in Dr. Gosal's own treatment notes. (Tr. 20); *see Halverson v. Astrue*, 600 F.3d 922, 930 (8th Cir. 2010) (noting that the extreme limitations assessed by treating physician were inconsistent with the claimant's normal mental status examinations). Accordingly, the ALJ stated that Dr. Gosal's broad statement that Stokes was "unable to work" due to significant depression, increased anxiety, and emotional lability, (Tr. 415), is "an opinion on a finding reserved for the Commissioner, is not a specific functional analysis, and has been given no weight." (Tr. 20). Social Security regulations deem state medical consultants like Dr. Toll "highly qualified and experts in Social Security disability evaluation," and ALJs "must consider" their findings as medical opinion evidence. 20 C.F.R. § 404.1513a(b)(1). Thus, the ALJ was entitled to rely on Dr. Toll's opinion, to the extent that it was consistent with other evidence, in conjunction with the other evidence considered. Having appropriately assessed the entire medical evidence including the opinion evidence of Dr. Toll and Dr. Gosal, the ALJ's decision when determining Stokes's mental RFC is supported by substantial evidence in the record as a whole.

### 2. Whether the ALJ Failed to Include Additional Restrictions on Stokes's Ability to Interact with Others Despite Determining Mild Limitations

The ALJ acknowledged that Stokes has mild limitations in understanding, remembering, or applying information; in interacting with others; in concentrating, persisting, or maintaining pace; and in adapting or managing oneself. (Tr. 14). Stokes asserts that the RFC was insufficient as the limitations that were included in the RFC failed to account for the mild limitations the ALJ stated existed regarding Stokes' ability to interact with others.

An RFC must include "only the impairments and limitations [the ALJ] found to be credible based on his evaluation of the entire record." *McGeorge v. Barnhart*, 321 F.3d 766, 769 (8th Cir. 2003). Thought the ALJ had determined that Stokes had mild social limitations when evaluating the severity of her limitation during step two, this does not mean that the ALJ needed to determine that identical limitations be included in the RFC. *See* SSR 96-8p, *4. Stokes had indicated only that she has difficulty getting along with others "when irritable" and the ALJ determined that "claimant has no more than mild limitation interacting with others attributed to her mental impairments." (Tr. 14). The ALJ considered the various social activities Stokes has been involved in when determining her social limitations, including her ability travel, to go shopping, and to attend church, bible study class, family events, and certain other social gatherings. (Tr. 14, 19, 37–44, 238–240, 586). Having considered Stokes's social capabilities as well as the limitations posed by Stokes's other potential mental limitations, the ALJ determined that "the restrictions in the residual functioning capacity limiting the claimant to simple, routine tasks and decision-making and no production pace tasks would reasonably accommodate the claimant's mental impairments." (Tr. 15). The record as a whole therefore provides substantial evidence supporting the ALJ's decision to exclude work-related social limitations as part of Stokes's RFC as to mental impairments.

11

## IV. Conclusion

For the reasons discussed above, as Stokes has not identified any aspect of the ALJ's decision that is unsupported by substantial evidence in the record, the ALJ's decision is AFFIRMED.

s/ Nanette K. Laughrey<br>
NANETTE K. LAUGHREY<br>
United States District Judge

Dated: April 24, 2020
Jefferson City, Missouri